**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ERIC WILKES,

      Petitioner,

v.                                                                    Case No.  8:03-CV-2073-T-30TGW

JAMES McDONOUGH,[1]

      Respondent.

_____/

## ORDER

      Petitioner, a State of Florida inmate proceeding *pro se*, filed a Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging a 2002 conviction for first degree

murder entered in the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1).

Respondent has filed a response to the petition (Dkt. 9). Although he has been afforded

three opportunities to do so, *see* Dkts. 5, 8, and 10, Petitioner has not filed a reply to the

response. The matter is now before the Court for consideration on the merits. An evidentiary

hearing is not required for the disposition of this matter. Rules Governing Section 2254

Cases 8(a).

**Background**

      On June 13, 2001, Petitioner was charged by Indictment for the first degree murder

of his wife, Deborah Wilkes.  Represented by court-appointed counsel John E. Swisher,

Petitioner entered a plea of guilty as charged on May 15, 2002, in return for the State's

---

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

promise to forego seeking the death penalty. Petitioner was adjudicated guilty and sentenced to a term of life imprisonment. He did not file a direct appeal.

On August 15, 2002, Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Criminal. P. 3.850 alleging two ineffective assistance of counsel claims and one due process claim challenging the validity of his guilty plea. On January 7, 2003, the trial court denied Petitioner's Rule 3.850 motion without an evidentiary hearing. The trial court's decision was affirmed on May 14, 2003, per curiam, without written opinion, with the mandate issuing on June 6, 2003. *See Wilkes v. State*, 847 So.2d 476 (Fla. 2d DCA 2003) (table decision).

Petitioner filed his request for federal habeas relief on September 22, 2003, asserting the three claims he raised in his Rule 3.850 motion, discussed *infra*. Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to meet the criteria for relief under 28 U.S.C. §§ 2254(d)-(e). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, the Court agrees.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996,  "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.  *See*

*Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

"In the post AEDPA era, [federal habeas courts] do not conduct an independent review of claims that have been addressed on the merits by the state courts." *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Respondent acknowledges that Petitioner's claims are properly exhausted, but maintains that he is not entitled to relief under § 2254.

**Grounds One and Three**

In these two grounds, Petitioner contends trial counsel rendered ineffective assistance. Because both claims are premised on the Sixth Amendment right to effective assistance of counsel, they will be discussed together.

In Ground One, Petitioner faults trial counsel for not investigating and preparing a "proper defense and secure [sic] exculpatory facts" (Dkt. 1 at 5). According to Petitioner, at the time he entered his plea, trial counsel was aware that he had a history of epileptic seizures and prolonged blackouts and was taking medications to control his epilepsy. Petitioner further contends that trial counsel, having witnessed Petitioner suffer a seizure in the holding cell while awaiting the commencement of the change of plea proceedings,[2] was ineffective for failing to advise the trial court at that time that he was not competent to enter a plea. Petitioner asserts that trial counsel misinformed the trial court regarding the results of a court-authorized psychological examination, which Petitioner contends was, contrary to trial counsel's statements to the trial court, never performed. Finally, Petitioner alleges that trial counsel, taking advantage of Petitioner's diminished mental capacity, coerced him to plead by advising him that if he chose to go to trial he would be found guilty and receive the death penalty.

---

[2]Petitioner was represented by John E. Swisher and Richard N. Watts. Petitioner is very specific in stating that both counsel were present at the holding cell "moments prior to [the] plea hearing" and witnessed him "having a seizure." The transcript reflects that when the case was called, the trial court asked Attorney Swisher whether he had "any witnesses." Attorney Swisher responded that "They're bringing him [Petitioner] over" (Dkt. 7, Ex. 3 at Tr. 4). The prosecutor and trial counsel then addressed the court regarding the purpose of the proceedings and the presence of family members who wished to speak before sentencing. A review of the billing statements for Attorneys Swisher and Watts reveals that Attorney Watts reported conferring with Petitioner the day of the change of plea hearing, but Attorney Swisher did not. Attorney Watts did not speak on the record at the change of plea hearing. Petitioner does not explain why he failed to alert the trial court to his dilemma during the change of plea proceeding.

In Ground Three, presented as Ground Two in his Rule 3.850 motion, Petitioner asserts that trial counsel was ineffective for failing to move to suppress Petitioner's confession. During the initial crime scene investigation, Petitioner agreed to speak with the investigating officers about the events leading up to his wife's death. At that time, Petitioner asserted that he was at work when she was murdered, and he found her body when he returned home. The initial interview lasted approximately three hours, and the investigating officers then drove Petitioner to his place of business.

When Petitioner was interviewed again the following evening, he appeared more composed. During the second interview, Petitioner initially continued to assert that someone other than himself had killed his wife. While being questioned regarding the blood found underneath his fingernails and statements allegedly made by several of his neighbors that contradicted his story, Petitioner "went into this long dissertation about what it's been like to live with her with this obsession, the germ phobia and compulsive disorder that she had" and admitted his guilt (Dkt. 7, Ex. 6, Ex. G thereto at Tr. 11). In his tape recorded confession, Petitioner told the officers how he planned his wife's death and detailed the steps he took to effect his plan. *Id.* at Tr. 11.

Petitioner does not contend that he did not make a post-*Miranda*[3] confession to the murder, arguing instead that trial counsel should have had his confession suppressed. According to Petitioner, he informed trial counsel that the investigators "exploited his weakened traumatized state, his deteriorated mental condition[,] and his medically documented affinity for having seizures and blackouts" and used "physical and

---

[3]Established in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment right to counsel is intended to operate prophylactically to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings. *Id.* at 478-79.

psychological coercion[,] not to mention trickery and deceit[,] to coerce an involuntary confession" (Dkt. 1 at 6). Petitioner contends that "no reasonable jurist who [sic] supplied with all the <u>FACTS</u> without the coerced confession would be able to find Petitioner guilty." *Id.* (emphasis in original).

Respondent asserts that because the allegations of ineffective assistance of counsel concern antecedent nonjurisdictional matters, these claims are waived by entry of Petitioner's voluntary guilty plea. It is well-established state and federal law that guilty pleas waive all but jurisdictional claims up to the time of the plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (holding that a guilty plea represents a break in the chain of events which has preceded it in the criminal process); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991)*; Parker v. State*, 603 So.2d 616 (Fla. 1st DCA 1992)*; Dean v. State*, 580 So.2d 808, 809 (Fla. 3d DCA 1991) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (finding that a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial)).   This waiver includes constitutional claims. *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived); *Dermota v. United States*, 895 F.2d 1324 (11th Cir.) (double jeopardy claim waived), *cert. denied*, 498 U.S. 837 (1990). Guilty pleas effectively foreclose most claims from collateral attack. *See United States v. Broce*, 488 U.S. 563, 569 (1989).

Claims of ineffective assistance of counsel are, however, reviewed to the extent that they impugn the validity of the plea itself.  *See Stano v. Dugger*, 921 F.2d at 1150-51 ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted

defendant can prove 'serious derelictions' in his  counsel's advice regarding the plea" (citations omitted)).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 687-88.  *See also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).

The two-part test articulated in *Strickland* applies to cases challenging pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205 (1988). Counsel owes a lesser duty to a client who enters a plea than to one who decides to go to trial. When a plea is entered, counsel need only provide his client with an understanding of the law in relation to the facts so that the defendant may make an informed and conscious choice between entering the plea and proceeding to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To be entitled to collateral relief, a defendant must "prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *McMann v. Richardson*, 397 U.S. 759, 774 (1970).

In the context of guilty pleas, the first half of the *Strickland* test is a restatement of the standard for attorney competence set forth in *Tollett v. Henderson*,  411 U.S. at 267, and *McMann v. Richardson*, 397 U.S. at 770-71.  The second, or "prejudice" requirement,

on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 58-59; *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland v. Washington*, 466 U.S. at 690). This judicial scrutiny is "highly deferential." *Id.* A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 689-90; *see also Bell v. Cone*, 535 U.S. 685, 698 (2002).

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (en banc), *cert. denied*, 536 U.S. 964 (2002) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899 (1994). Moreover, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely

to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington,* 466 U.S. at 690-91.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. *Id.* at 1314 n.15.

As stated above, Petitioner raised his ineffective assistance of counsel claims in his Rule 3.850 motion. While the trial court failed to cite the standard enunciated by the Supreme Court for ineffective assistance of counsel claims, *see Strickland v. Washington*, 466 U.S. at 687, a state court does not have to cite Supreme Court precedent, or even be aware of it, so long as its decision is not inconsistent therewith. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell v. Esparza*, 540 U.S. at 17; *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). Thus, to establish that he is entitled to relief on these claims, Petitioner must establish that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that the claims raised in his Rule 3.850 motion lacked merit. Petitioner has failed to meet this burden.

In rejecting Petitioner's claims, the trial court found as follows:

**GROUND ONE Ineffective Assistance of Counsel**

Defendant alleges that counsel was ineffective for failing to investigate and prepare a meaningful defense. Defendant argues that counsel took advantage of his mental capacity and coerced him into entering a plea. Contrary to Defendant's contention however, counsel as well as co-counsel spent time reviewing and researching his case. *See* Exhibit C. In addition, counsel obtained the services of a private investigator and a confidential

expert. *See* Exhibit D. Counsel also took numerous depositions on Defendant's behalf. *See* Exhibit E. Defendant argues that his mental capacity was diminished[,] however[,] counsel informed the Court that the confidential expert found no reason Defendant could not proceed with a plea. *See* Exhibit F. Defendant argues that he was coerced into entering a plea, however the Court conducted a thorough plea colloquy with Defendant and found his plea was freely and voluntarily entered. *See* Exhibit F. The Court informed Defendant that he could be sentenced to life in prison or death if a jury found him guilty. This claim is denied.

**GROUND TWO Ineffective  Assistance of Counsel**

Defendant alleges that counsel was ineffective for failing to move to suppress his confession to police. Defendant argues that he informed counsel that investigators used physical and psychological coercion as well as trickery and deceit. Defendant, however, cannot say with any certainty that his statements would have been suppressed. Counsel took a deposition of Officer Madden, which did not indicate any strong basis to believe a motion to suppress would be successful. Defendant reportedly confessed to the crime then led investigators to areas where he hid evidence. In addition to confessing to the police, Defendant also reportedly discussed the crime with fellow inmates who came forward. *See* Exhibit G. Defendant fails to show how he was prejudiced by counsel's alleged failure to move to suppress his statements to police. This claim is denied.

Dkt. 7, Ex. 06. The record supports trial court's decision. A trial court's factual finding is presumed to be correct unless the petitioner rebuts it by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not met this burden.

First, Petitioner's assertion that trial counsel was ineffective for not investigating and preparing a "proper defense and secure [sic] exculpatory facts,"[4] *see* Dkt. 1 at 5, devoid of any factual support, is insufficient to obtain relief under § 2254. *See Caderno v. United States,* 256 F.3d 1213, 1217 (11th Cir. 2001) (noting that habeas relief is not warranted

---

[4]While Petitioner does not state the nature of the defense to which he refers, he does assert that he informed trial counsel that his wife's ex-husband threatened her and had a history of domestic abuse. Petitioner adds, parenthetically, that his wife's ex-husband was arrested shortly after her murder on charges of false imprisonment, assault with a knife, and battery involving his girlfriend (Dkt. 1 at 5). As Respondent opines in the response, Petitioner's confession and his endeavor during the sentencing hearing to explain the premeditated killing of his wife demonstrates the difficulty attendant with an insanity defense.

when claims are merely conclusory allegations unsupported by specifics); see *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Moreover, as the trial court noted, the record reflects that trial counsel reviewed discovery materials and the autopsy report, attended numerous depositions, secured the services of a private investigator and a confidential expert, with whom he communicated by letter and telephone, and met with Petitioner on several occasions to discuss the status of the case and strategy, as well as appearing in court on Petitioner's behalf on seven occasions during the 11-month period between his appointment and Petitioner's sentencing, *see* Dkt. 7, Ex. 06, Exs. C, D, and E attached thereto. There is no absolute duty to investigate particular facts or a certain line of defense. *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001). Applying the standard enunciated in *Strickland*, trial counsel's performance was well within the wide range of competent assistance. 466 U.S. at 691 (stating that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

Likewise, Petitioner's claim that trial counsel was ineffective in allowing him to enter a plea lacks merit. First, Petitioner's assertion that trial counsel lied when he informed the trial court that the confidential expert found that Petitioner was competent to proceed because he was never examined by the confidential expert is rebutted by Petitioner in his Rule 3.850 claim that "[tr]ial counsel erred in never following up on psychologist[']s report to find if their [sic] were any significant findings that would help counsel prepare a meaningful defense" (Dkt. 7, Ex. 4 at 6-7). If, as Petitioner now contends, he did not

undergo a psychological evaluation, it is axiomatic that there would be no report of findings related to his mental state, significant or otherwise.

As to Petitioner's assertion that trial counsel was ineffective for failing to advise the trial court that he was not competent to enter a plea because he suffered a seizure while in the holding cell awaiting the commencement of the change of plea proceedings, this allegation, standing alone, is insufficient to overcome the presumption of correctness accorded the trial court's determination, implicit in its finding that he entered his plea "freely and voluntarily," that Petitioner was competent to proceed (Dkt. 7, Ex. 3 at Tr. 11). Claims not fairly raised will not be entertained on collateral attack. *United States v. Jones,* 614 F.2d 80 (5th Cir.1980); *Walker v. Dugger,* 860 F.2d 1010, 1011 (11th Cir.1988) (claims raised only superficially). While a pro se litigant may be entitled to liberal construction of his arguments, issues mentioned only superficially will not be treated as properly raised. *Walker,* 860 F.2d at 1011. Likewise, vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *See Tejada v. Dugger,* 941 F.2d at 1559; *Hannon v. State*, 941 So.2d 1109, 1138 (Fla. 2006) ("The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden.") (quoting *Freeman v. State*, 761 So.2d 1055, 1061 (Fla. 2000)). Notably, when considered in context, Petitioner's ability to understand and respond appropriately to questions proffered by the trial court during the plea colloquy and the rational and coherent manner in which he addressed the trial court and the victim's family during sentencing, discussed *infra*, refute his claim of incompetency.

Petitioner was afforded several opportunities to address the trial court during the change of plea hearing and sentencing, yet he did not contest trial counsel's

representations that he had been examined and determined to be competent to proceed and that he understood the nature of the charge against him and possible consequences of his plea and voluntarily chose to plead guilty. To the contrary, Petitioner confirmed, under oath, that prior to appearing at the change of plea hearing, trial counsel reviewed the terms of the plea form with Petitioner and counseled him regarding the consequences of a plea. Petitioner further informed the trial court that he believed that it was in his best interest to plead guilty as charged (Dkt. 7, Ex. 3 at Tr. 8). It is reasonable to conclude from the record that trial counsel provided Petitioner an understanding of the law in relation to the facts such that he could make an informed and conscious choice between entering the plea and proceeding to trial. *See Wofford v. Wainwright*, 748 F.2d at 1508.

Petitioner's assertion that he was coerced to enter a plea in order to avoid the death penalty is likewise meritless.  A defendant's guilty plea is not rendered involuntary because he is motivated by his fear of receiving the death penalty if his case were tried to a jury. *Brady v. United States*,  397 U.S. 742, 749-50 (1970). Trial counsel had a duty to advise Petitioner of the penalty that the State would seek to impose if he were convicted of first-degree murder.  Under Florida law, "[t]he unlawful killing of a human being: [w]hen perpetrated from a premeditated design to effect the death of the person killed or any human being;  . . is murder in the first degree and constitutes a capital felony, punishable as provided in [§] 775.082." Fla. Stat. § 775.04(1) (2001).  "[A] person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in [§] 921.141[5] results in findings by the court

---

[5]Under Fla. Stat. § 921.141 (2001), if a defendant is found guilty of a capital offense, a separate evidentiary hearing is held before the trial judge and jury to determine his sentence. Evidence may be presented on any matter the judge deems relevant to sentencing and must include matters relating to certain
(continued...)

that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole." Fla. Stat. § 775.082 (2001). Trial counsel is not ineffective for advising his client of the possible consequences of a jury trial.

As to Petitioner's assertion in Ground Three that trial counsel was ineffective for failing to move to suppress his confession, more than mere conclusory allegations are necessary to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 689-90. The voluntariness inquiry turns on whether the confession was the product of a free and deliberate choice rather than intimidation, coercion or deception, *see Moran v. Burbine*, 475 U.S. 412, 421 (1986), and focuses on police overreaching, *see Colorado v. Connelly*, 479 U.S. 157, 170 (1986). Both of these inquiries are based upon the totality of the circumstances. See *Moran*, 475 U.S. at 421.

Here, Petitioner fails to set forth with particularity facts that, if proven, would establish that his confession was coerced. *See generally, Waldrop v. Jones*, 77 F.3d 1308, 1316 (11th Cir. 1996) (the court must assess totality of the surrounding circumstances - both the characteristics of the accused and details of interrogation) (citations omitted). As the record demonstrates, trial counsel investigated the circumstances surrounding the confession, including deposing the officer to whom Petitioner confessed. Having reviewed the record and considered Petitioner's allegations, this Court agrees with the trial court that Petitioner has failed to show that he was prejudiced by trial counsel's failure to move to suppress his confession. Nothing in the record suggests any impropriety by the police.

---

[5](...continued)
legislatively specified aggravating and mitigating circumstances. Both the prosecution and the defense may present argument on whether the death penalty shall be imposed.

Petitioner's subjective view that the police 'exploited' his state of mind would not compel a finding of coercion in any regard. *Colorado v. Connelly*, 479 U.S. at 167 (a defendant's perception of coercion that is solely caused by his unique mental status is not a factor). Despite a defendant's assertions otherwise, where there is no indication that the defendant was coerced into confessing to the offense, trial counsel is not ineffective for failing to move to suppress the confession. *See Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."); *Teffeteller v. Dugger*, 734 So.2d 1009, 1023 (Fla. 1999) ("Trial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding.").

Petitioner has failed to demonstrate that the state court's rejection of these claims relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent.

**Ground Two**

In Ground Two, Petitioner contends that his right to due process was violated when he was allowed to enter a plea while incompetent. Petitioner further asserts that "he had just had a seizure[,]" was "severely medicated[6] [and] depressed[,]" and had "basically given up on life, . . . [thus] was in no way competent to enter [a] plea" (Dkt. 1 at 6). Petitioner further argues that these "disabilities" prevented him from understanding the nature and consequences of his plea.

---

[6]According to Petitioner, he was under the influence of Tegretol, an anti-seizure medication used to reduce irritability and impulsivity, and phenobarbitol, a barbiturate, when he entered his plea.

Petitioner raised this claim as Ground Three in his Rule 3.850 motion.  In rejecting

the claim, the trial court found as follows:

### GROUND THREE Violation of Due Process

Defendant argues that the Court violated his due process rights by failing to consider his level of competency at the time he entered his plea. Contrary to Defendant's contention, however, the Court had no basis to believe that Defendant was incompetent to enter a plea. The Court, in fact, conducted a thorough plea colloquy and found Defendant's plea to be freely and voluntarily made. Defendant informed the Court that he was taking medications for his epilepsy but specifically stated that they did not inhibit his ability to understand what he was doing. As previously stated, counsel informed the Court that Defendant had been evaluated by a confidential expert and there was no finding that Defendant was incompetent. *See* Exhibit F. This claim is denied.

Dkt. 7, Ex. 06.

Petitioner is raising a substantive competency claim by alleging that he did, in fact,

plead guilty while mentally incompetent.  A claim of incompetency in fact is different from

a procedural due process violation cognizable under *Pate v. Robinson*, 383 U.S. 375

(1966). *See James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992). A criminal

defendant may not plead guilty unless he does so "competently and intelligently," and the

standard for determining competency to stand trial is the same as the standard for

determining competency to plead guilty.  *Godinez v. Moran*, 509 U.S. 389, 391 (1993).

Federal habeas courts will only consider claims of mental incompetence to stand trial when

the facts are sufficient to positively, unequivocally, and clearly generate a real, substantial,

and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate

and cooperate with counsel during a criminal trial. *Zapata v. Estelle*, 585 F.2d 750, 751-52

(5th Cir. 1978).  Here, the test is whether the defendant has "sufficient present ability to

consult with his lawyer with a reasonable degree of rational understanding" and has "a

rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. at 396. Whether or not the defendant is taking a medication when he enters his plea is a factor to be considered in assessing competency, but it is not determinative.

When federal habeas corpus relief is sought on the ground the defendant was incompetent to stand trial, the petitioner's initial burden is substantial. Petitioner fails to meet this burden.

To succeed on a claim of incompetency by reason of medications taken at the time the plea was entered, the defendant must present evidence demonstrating that the dosage given him affected him sufficiently adversely so as to raise doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him. *See Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987). Even treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial. *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992) (finding that "[a] bare allegation of the level of psychotropic drugs administered to [the] petitioner before entering his plea . . . is insufficient" to demonstrate incompetency).

Petitioner has identified the medications he was allegedly taking when he entered his plea, but he fails to demonstrate that the dosage given him affected him sufficiently adversely to raise doubt about the trial court's finding that his plea was entered freely and voluntarily, with full knowledge and understanding of the consequences thereof.

Petitioner does not allege sufficient facts or point to medical records that would raise a real, substantial, and legitimate doubt as to his competency to enter his plea. While he asserts that he had a history of seizures and blackouts and was undergoing treatment for

epilepsy, Petitioner fails to point to any medical or corroborative evidence that either his epilepsy or the potential side effects of the medications he was taking rendered him incompetent, much less that he was suffering from a particular side effect from the medications at the time of the plea. Petitioner also fails to articulate sufficient facts that would show, if proven, that any purported mental illness or medication adversely affected him so as to render him unable to understand the proceedings or trial counsel's advice.

Furthermore, as the record demonstrates, it is objectively reasonable for the trial court to reject this claim.  Having heard Petitioner's answers, given under oath,  and observed his demeanor during the plea colloquy, the trial court found that Petitioner entered his plea voluntarily and knowingly.  As the state court noted in rejecting this claim in Petitioner's Rule 3.850 proceedings, the record reflects that Petitioner "informed the [trial] [c]ourt that he was taking medications for his epilepsy but specifically stated that they did not inhibit his ability to understand what he was doing" (Dkt. 7, Ex. 06).  Representations made by a petitioner during the plea proceedings and findings made by the trial court accepting the plea constitute a formidable barrier in subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Gonzalez- Mercado*, 808 F. 2d 796 (11th Cir. 1987).  Petitioner has not demonstrated a basis for the Court to disregard the statements he made under oath during the plea colloquy regarding the absence of any side effects of the medication he had taken.

Nothing in Petitioner's argument establishes that any evidence or factual information was ever presented to the trial judge who presided over petitioner's capital murder case showing either that (1) Petitioner had a history of irrational, as opposed to merely criminal,

behavior, (2) there was anything about Petitioner's bearing or demeanor at the time he entered his plea that would have raised "a real, substantial, and legitimate doubt" as to his mental capacity, or (3) any prior medical or psychological evaluation of Petitioner had ever found him to be incompetent. On the contrary, as discussed *supra*, according to trial counsel's statement to the trial court, Petitioner had been evaluated by a confidential expert and he was competent to proceed.

Finally, as discussed above, during the plea colloquy, when queried by the trial court, Petitioner stated that he was being treated for epilepsy, but he did not inform the trial court that he had a seizure while awaiting the commencement of the hearing.  Moreover, Petitioner stood silent while trial counsel assured the trial court that Petitioner understood what he was doing and the consequences of his acts. Petitioner himself likewise assured the trial court that he fully understood what he was doing. Petitioner further assured the trial court that no offers or promises were made to induce him to enter the guilty plea; nobody forced, coerced, or threatened him to enter the plea; and he was entering the plea freely and voluntarily. Assuming, *in arguendo*, that Petitioner was not competent to enter his plea, he was complicit in convincing the trial court to the contrary. Under Florida law, "[a] party may not invite error and then be heard to complain of that error on appeal." *Cox v. State*, 819 So.2d 705, 715 (Fla. 2002) (quoting *Pope v. State*, 441 So.2d 1073, 1076 (Fla. 1983); *Sullivan v. State* 303 So.2d 632, 635 (Fla. 1974) (where the trial court extends an opportunity to cure an error and the party fails to take advantage of the opportunity, the error was invited and does not warrant relief). The invited error doctrine is also applied in federal courts.  *See United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006) ("The doctrine of invited error is implicated when a party induces or invites the district court into

making an error," and where a party invites error, the court is precluded from reviewing that error (quotations and citations omitted)). To grant Petitioner relief on this claim would effectively reward him for perpetrating a fraud on the trial court.

Petitioner does not claim that he did not know right from wrong when he planned the murder, carried it out by repeatedly stabbing his wife, and when she continued to resist, choking her to death, and then concealed evidence of the crime. To the contrary, when addressing the trial court during sentencing, Petitioner stated:

> This is basically to everybody involved, the family with Debbie. . . And so your question is:  Why didn't I just leave her?  Why didn't I just – if stuff was getting too bad or whatever – all I know is that seeing her coming back crying and begging me to come back and seeing her even try to kill herself on three different occasions, I just – I didn't know what else to do.
>
> I would see her and realize, you know, this isn't her fault that she's making us do all of this stuff.  It's not by her choice that all of this is happening.  So I kept coming back thinking, hey, somehow we're going to make this work out.  We're going to make it through this somehow. And knowing that if I were to leave her or something like that, that she would go and try to kill herself or, you know, what she would – who knows what would have become of her.  I don't know. . . .
>
> She seemed to be scared of everything to the point that I guess also in the back of my mind, I was thinking, Hey, it was just – it wasn't the Debbie that we all knew anymore.  It wasn't the same girl that I had married.  This wasn't the happy go lucky woman that we all knew back when I married her.  This problem had totally taken control over her.  I just thought it would be for the better.
>
> I didn't mean for there to be any kind of struggle or for her to be tortured at all when it all happened.  You all just had to be there to know what all was going on. . . .
>
> Imagine spending every living hour day and night that you aren't [sic] at home with this problem? This wasn't anything I had against the woman, Deborah Wilkes. I didn't have anything against her. I knew it wasn't her doing.  And that's why I kept coming back every time.  I'm sorry.

Dkt. 7, Ex. 3 at Tr. 22-25. The trial court concluded that Petitioner's remarks during sentencing suggested that he viewed killing his wife as an act of mercy – that he killed her to end her misery. Petitioner's statement could as easily suggest that he killed his wife to end his misery.

Petitioner fails to demonstrate that the trial court's decision on his involuntary plea claim resulted in an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts in light of the evidence. Thus, Petitioner has failed to establish that he is entitled to federal habeas relief on this claim.

## Conclusion

For the foregoing reasons, the Court determines that Petitioner has not met the criteria for relief under 28 U.S.C. § 2254.

ACCORDINGLY, the Court **ORDERS** that:

1.    The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2.    The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 1, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties/Counsel of Record

SA:jsh